## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JEFFREY ENGLUND, ALICIA MCKNIGHT, DEBRA NICOLE RICE, and ALANNA CARTER, on behalf of themselves and all others similarly situated

*Plaintiffs*,

v.

STATE OF KANSAS, KRIS KOBACH, in his official capacity as the Attorney General for the State of Kansas, KANSAS OFFICE OF JUDICIAL ADMINISTRATION, BUTLER & ASSOCIATES, P.A., JOHNSON COUNTY DISTRICT COURT, CHIEF JUDGE JAMES CHARLES DROEGE, in his official capacity as Chief Judge for the Johnson County Kansas District Court, and JUDGE MICHAEL JOYCE, JUDGE NEIL B. FOTH, JUDGE SARA WELCH, JUDGE BRENDA CAMERON, and JUDGE CHRISTINA DUNN GYLLENBORG in their official capacities as District Judges for the Johnson County Kansas District Court,

*Defendants*.

Civil Action No.

Judge:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs JEFFREY ENGLUND ("Englund"), ALICIA MCKNIGHT ("McKnight"), DEBRA NICOLE RICE ("Rice"), and ALANNA CARTER ("Carter"), in their individual capacities (collectively, the "Plaintiffs") and on behalf of themselves and all others similarly situated, by and through their undersigned counsel, AMERICAN CIVIL LIBERTIES UNION OF KANSAS and WILLKIE FARR & GALLAGHER LLP, allege the following against Defendants STATE OF KANSAS ("Kansas"), KRIS KOBACH ("AG Kobach"), JAMES CHARLES

DROEGE ("Chief Judge Droege"), BUTLER & ASSOCIATES, P.A. ("Butler"), KANSAS OFFICE OF JUDICIAL ADMINISTRATION ("OJA"), JOHNSON COUNTY DISTRICT COURT (the "Johnson County Court"), and JUDGE MICHAEL JOYCE, JUDGE NEIL FOTH, JUDGE SARA WELCH, JUDGE BRENDA CAMERON, and JUDGE CHRISTINA DUNN GYLLENBORG (collectively, the "Defendant Judges") and state as follows:

## NATURE OF THE ACTION

### Overview and Statutory Framework

1.      Only two categories of individuals can be subjected to a lifetime of supervision by Johnson County (the "County") and the Johnson County Court for the State of Kansas: convicted sex offenders and the poor.

2.      Kansas Statute § 21-6608(c)(7) provides a higher statutory ceiling to punish poor defendants than it does for defendants who committed identical offenses but have the ability to pay court-ordered restitution.  In fact, for poor defendants, there is no ceiling.

3.      The Kansas Legislature set a probation period ceiling for every probationer except for probationers who are unable to pay restitution.

4.      Kansas Statute § 21-6608(c)(7) is unconstitutional on its face and as applied.

5.      Chief Judge Droege and the Defendant Judges, relying on the language of Kansas Statute § 21-6608(c)(7), have extended Plaintiffs' probation well beyond the standard five-year probation ceiling, and even beyond the recommended term of imprisonment provided by the sentencing guidelines.

6.      Chief Judge Droege and the Defendant Judges' practice of extending probation indefinitely for failure to pay restitution allows the same punishment for the indigent person who commits forgery or theft as for persons who commit sexually violent crimes, the one subset of

convicts the Kansas Legislature determined are appropriately punished by lifetime post-release supervision.

7.    Chief Judge Droege and the Defendant Judges only subject probationers who are unable to satisfy outstanding debt stemming from restitution orders to this disproportionate sanction.

### Implementation of the Statute and County Practices

8.    Kansas Statute § 21-6608(c)(7)'s text enables the unconstitutional practice and the County's implementation confirms the constitutional harm.

9.    Chief Judge Droege and the Defendant Judges punish individuals whose pecuniary status makes them unable to pay outstanding restitution debt by extending the term and conditions of probation.

10.    This is true even though Johnson County Court has a method for collecting restitution that does not require extending probation and data does not show that probation extensions effectuate one of the state's penal interests.

11.    In the cases of Plaintiffs, the Defendant Judges extended the probation term on multiple occasions so that Plaintiffs' probation terms were years, and in some cases, decades longer than the probationary period prescribed by the legislature for the crime for which they were convicted.

12.    The statute relied upon by the Defendant Judges to extend Plaintiffs' probation also provides that a court may determine whether a probationer has the means and ability to pay outstanding debt and allows a judge to waive payments in whole or in part.

13.    The statute's broad grant of discretion, however, is unaccompanied by binding standards or uniform criteria guiding how that discretion should be exercised, thereby inviting

3

inconsistent and erratic application from case to case. In practice, this absence of objective benchmarks means similarly situated probationers receive disparate outcomes, and no probationer can reasonably predict whether the court will waive payment and discharge supervision or instead prolong probation solely because of inability to pay.

14.    Notwithstanding the discretion granted to the Johnson County Court to waive payments due to inability to pay, Chief Judge Droege and the Defendant Judges repeatedly extended Plaintiffs' probation due to failure to pay restitution without a hearing or finding regarding their ability to pay and without representation of counsel.

15.    By dispensing with basic procedural safeguards necessary to cabin discretion—namely, an ability-to-pay determination and the assistance of counsel—the courts render their decisions opaque and effectively unreviewable, thereby amplifying the risk of arbitrary results.

16.    The consequence of the statutory provisions is a system in which probationers cannot anticipate when, if ever, their indigence will be recognized and their supervision terminated, producing an unpredictable regime under which probation is often extended indefinitely for those who lack the means to pay.

17.    Chief Judge Droege and the Defendant Judges may arbitrarily extend probation for some who owe restitution and discharge others from probation while still requiring them to make restitution payments. Because no uniform standards are articulated or consistently applied, outcomes turn on the unfettered preferences of individual decision-makers rather than principled, transparent criteria, resulting in a patchwork of decisions that probationers cannot foresee or rely upon.

18.    This unpredictability undermines equal treatment and basic fairness, as persons with comparable financial circumstances face diametrically different consequences—waiver and

discharge for some, indefinite supervision for others—based solely on the happenstance of which judge exercises discretion.

19.    Additionally, Chief Judge Droege and the Defendant Judges require some probationers to remit their restitution payments to a debt collection agency, Butler.  Butler adds administrative fees and interest which must also be paid before the probationer can be discharged from probation.  The discretionary imposition of third-party collection—layering additional costs that accrue over time—further obscures the path to discharge and deprives probationers of any reliable means to predict the total amount necessary to terminate supervision.

20.    For those unable to absorb compounding fees and interest, probation becomes effectively open-ended.  These extensions do not merely lengthen supervision; they perpetuate burdens that trounce on multiple fundamental rights.

21.    Defendants' practice of extending a term of probation until restitution debt is paid in full infringes upon and/or completely deprives Plaintiffs of fundamental rights on the basis of Plaintiffs' indigency because, in addition to the order to pay restitution, all conditions of the original probation order are also extended and continue to apply.  The practice of ongoing probation extension deprives Plaintiffs of the right to privacy, subjects Plaintiffs to cruel and unusual punishment, denies them fundamental fairness and due process, places restrictions on their right to vote, and imposes upon them the badge and indicia of slavery.

### Deprivation of the Right to Privacy

22.    Because probationers in Kansas are subject to searches of their persons, homes and effects, without warrant or suspicion, Defendants' practice of extending probation due to inability to pay restitution deprives Plaintiffs of the constitutional right to privacy based on their indigency.

23.     The right to privacy, as guaranteed by the Fourth Amendment of the U.S Constitution and Article 15 of the Kansas Bill of Rights, is a fundamental liberty interest.

24.     From the date of conviction until now, Plaintiffs have been subject to warrantless, baseless searches, surveillance and restriction of their movements, oversight of their associations and habits, vagrancy laws, and any other directives given by the County and its courts.

### Cruel and Unusual Punishment

25.     The practice of ongoing probation extension also subjects Plaintiffs to cruel and unusual punishment.

26.     The right to be free from cruel and unusual punishment, as guaranteed by the Eighth Amendment of the United States Constitution and Article 9 of the Kansas Bill of Rights, is also a fundamental interest.

27.     The law against cruel and unusual punishment prohibits any punishment that, although not cruel or unusual in its method, is so disproportionate to the crime for which it is inflicted that it shocks the conscience.

28.     Perpetual probation for indigent probationers is cruel and unusual punishment because it results in a term of probation hugely disproportionate to the crime.

### Disenfranchisement

29.     The deprivation of rights from perpetual probation extensions also extends to civic participation, compounding the constitutional injury.

30.     Chief Judge Droege and the Defendant Judges' practice of extending probation based solely on outstanding restitution denies the probationer who was convicted of a felony the right to vote for as long as they cannot pay their restitution debt.

31.     No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.  Other rights, even the most basic, are illusory if the right to vote is undermined.

32.     Restitution, unlike incarceration or post-release supervision, is a debt owed to a private victim, not to society.  In Kansas, restitution is not punitive in nature, but rather, it is intended to be restorative.

33.     Therefore, when Chief Judge Droege and the Defendant Judges require some probationers to remit their restitution to Butler, Butler, like the Johnson County Court, is merely a debt collector for private victims[1] on behalf of the County.  As such, Butler should have no more right to place restrictions on the franchise than the private creditors on whose behalf they collect.

34.     No private creditor or their debt collector, whether it be an individual or corporation, has the right to place limitations or restrictions on the right to vote—only the legislature may exclude persons from voting because of a criminal sentence.

35.     Denying the franchise to a person solely because they owe money, whether to their government, a private individual, or a company, as the Defendants do here, is a violation of Plaintiffs' U.S. and Kansas Constitutional rights.

### Procedural Due Process and Equal Protection Violations

36.     At its core, the County's approach to restitution collection and probation extension dispenses with the basic procedures the U.S. and Kansas Constitution demand.

---

[1] K.S.A. § 21-6604(b)(3) ("The restitution shall be a judgment against the defendant that may be collected by the court by garnishment as provided in article 7 of chapter 60 of the Kansas Statutes Annotated, and amendments thereto, or other execution.  If, after 60 days from the date restitution is ordered by the court, a defendant is found to be in noncompliance with the restitution order, the court shall assign an agent procured by the judicial administrator pursuant to K.S.A. § 20-169, and amendments thereto, to collect the restitution on behalf of the victim.").

37.      The Fourteenth Amendment guarantees procedural and substantive due process rights for all Kansas citizens, and the deprivation of liberty without due process of law is necessarily a violation of the amendment.

38.      Defendants repeatedly deprived Plaintiffs of liberty and the right to privacy with virtually no process afforded to Plaintiffs.  Kansas Statute § 21-6608(c)(7) counsels that probation be extended wherever and whenever a probationer is unable to pay monetary restitution and fees. There is virtually no inquiry, let alone a formal hearing or finding, into *why* that probationer was unable to make their payments or whether an alternative option could effectuate the same stated goals as the resulting probation extensions.

39.      And it can hardly be said that a person had an opportunity to be heard by a fair and impartial decision-maker where the outcome of that decision—extended probation—is compelled by law.

40.      The "process" afforded to Plaintiffs by Kansas Statute § 21-6608(c)(7) is nothing more than a judicial rubber-stamping of their probation extensions based upon a perfunctory showing of nonpayment.  Such "process" hardly satisfies the Fourteenth Amendment, and Plaintiffs are entitled to relief for the continued violation of their constitutional rights.

41.      The scheme also violates the Constitution's guarantee of equal protection by imposing harsher penalties solely on the basis of wealth.

42.      Subjecting a person to harsher punishment on the basis of how much money they have is a violation of the Fourteenth Amendment, which guarantees equal protection of the law to all persons.

43.     Kansas Statute § 21-6608(c)(7) compels the exact two-tiered justice system that courts have long condemned by punishing poor probationers more severely than their wealthier counterparts.

44.     A bedrock principle of the American criminal justice system is the understanding that a defendant's wealth (or the lack thereof) should not influence their chances in court.

45.     Laws that compel these unconstitutional sentences should be reviewed under heightened scrutiny and struck down accordingly.

46.     Defendants cannot show that there is a compelling government interest in their excessive privacy invasions and disenfranchisement of poor, but not wealthy, individuals.

**Thirteenth Amendment Violations**

47.     The restrictions on Plaintiffs as a condition of their perpetual probation also bear the hallmarks of involuntary servitude that the Thirteenth Amendment condemns.

48.     Restrictions on movement—including interstate travel—limitations on the freedom of association, denial of access to otherwise lawful activities and goods, state-enforced conditions regarding paid and unpaid labor, and disenfranchisement have all been recognized by the Supreme Court of the United States as pernicious indicia of slavery prohibited by the Thirteenth Amendment of the United States Constitution.

49.     Because of Chief Judge Droege and the Defendant Judges' practice of prolonging probation beyond the statutorily designated term, for poor probationers a restitution order becomes an indefinite, and possibly life, sentence to probation and the indicia of slavery that come with all of its restrictions.

50.     The County's approach to probation extension distorts restitution's purpose and yields no legitimate penological benefit.  Keeping an indigent person on probation due to

outstanding debt does not benefit a crime victim, rehabilitate the probationer, or serve any other penological interest that warrants infringing upon fundamental rights guaranteed by the United States and Kansas constitutions.

51.     Accordingly, Plaintiffs seek redress for these violations of federal and state constitutional law.

## Claims for Relief

52.     Plaintiffs bring this civil rights action pursuant to 42 U.S.C. § 1983 to redress violations of the named Plaintiffs' and class members' rights under the Fourth, Eighth, Thirteenth, and Fourteenth Amendments of the United States Constitution.

53.     Plaintiffs also bring this cause of action pursuant to Article Two and Sections Nine and Fifteen of the Kansas Bill of Rights.

54.     Named Plaintiffs Englund, McKnight, Carter, and Rice and as well as the class members whose interests they represent, seek monetary damages against Defendants[2] for violation of these rights.

55.     Named Plaintiffs Englund, McKnight, Carter, and Rice and as well as the class members whose interests they represent, seek prospective injunctive relief against the Defendants to enjoin Defendants from continuing their unlawful and unconstitutional policies, practices, and customs.

56.     Named Plaintiffs Englund, McKnight, Carter, and Rice and as well as the class members whose interests they represent, seek declaratory relief and ask this Court to issue a judgment stating that Kansas Statute § 21-6607(c) unlawfully violates the Fourth, Eighth,

---

[2] Plaintiffs seek an award of monetary damages for the violation of their constitutional rights, but only against those Defendants from whom such relief is legally available and not barred by immunity or other applicable law.

Thirteenth, and Fourteenth Amendments to the United States Constitution and Article 5, and Sections Nine, and Fifteen of the Kansas State Constitution.

## PARTIES

57.    Plaintiff Jeffrey Englund ("Englund") has been sentenced to probation by the Johnson County Court since June 28, 2018.  Plaintiff Englund is domiciled in Shawnee, Kansas.

58.    Plaintiff Alicia McKnight ("McKnight") has been sentenced to probation by the Johnson County Court since September 30, 2016.  Plaintiff McKnight is domiciled in Kansas City, Missouri.

59.    Plaintiff Alanna Marie Carter ("Carter") has been sentenced to probation by the Johnson County Court since March 13, 2018.  Plaintiff Carter is domiciled in Independence, Missouri.

60.    Plaintiff Debra Nicole Rice ("Rice") has been sentenced to probation by the Johnson County Court since May 25, 2018.  Plaintiff Rice is domiciled in Bates City, Missouri.

61.    Defendant STATE OF KANSAS ("Kansas") is a government entity.  Kansas maintains its principal place of business in Topeka, Kansas.  At all relevant times, Kansas acted under the color of state law.

62.    Defendant KRIS KOBACH ("AG Kobach") is the duly elected and acting Attorney General for the State of Kansas.  AG Kobach is sued in his official capacity as the Attorney General for the State of Kansas.  AG Kobach performs his official duties in Topeka, Kansas.  At all relevant times, AG Kobach acted under the color of state law.

63.    Defendant JAMES CHARLES DROEGE ("Chief Judge Droege") is the Chief Judge for the Johnson County District Court of Kansas.  Chief Judge Droege is sued in his official capacity as the Chief Judge for the Johnson County District Court of Kansas.  Chief Judge Droege

performs his official duties in Olathe, Kansas.  At all relevant times, Chief Judge Droege acted under the color of state law.

64.     Defendant BUTLER & ASSOCIATES, P.A. ("Butler") is a private collections agency that has contracted, and continues to contract, with the Kansas Office of Judicial Administration and the Johnson County District Court to collect outstanding restitution payments from probationers under the supervision of Kansas and the Johnson County District Court.  Butler maintains its principal place of business in Topeka, Kansas.  At all relevant times, Butler acted under the color of state law.

65.     Defendant KANSAS OFFICE OF JUDICIAL ADMINISTRATION ("OJA") is the administrative body of the Kansas State Supreme Court.  OJA provides legal, financial, technological, management, administrative, and program support services to state courts, including the Johnson County Court.  As part of its duties, OJA is responsible for the implementation of state statutes that relate to state expenditures for district court operations.  OJA maintains its principal place of business in Topeka, Kansas.  At all relevant times, OJA acted under the color of state law.

66.     Defendant JOHNSON COUNTY DISTRICT COURT (the "Johnson County Court") is a judicial body within the State of Kansas Judiciary.  The Johnson County Court maintains its principal place of business in Olathe, Kansas.  At all relevant times, the Johnson County Court acted under the color of state law.

67.     Defendant JUDGE MICHAEL JOYCE ("Judge Joyce") is a judge for the Johnson County District Court of Kansas.  Judge Joyce is sued in his official capacity as a judge for the Johnson County District Court of Kansas.  Judge Joyce performs his official duties in Olathe, Kansas.  At all relevant times, Judge Joyce acted under the color of state law.

68.     Defendant JUDGE NEIL B. FOTH ("Judge Foth") is a judge for the Johnson County District Court of Kansas.  Judge Foth is sued in his official capacity as a judge for the Johnson County District Court of Kansas.  Judge Foth performs his official duties in Olathe, Kansas.  At all relevant times, Judge Foth acted under the color of state law.

69.     Defendant JUDGE SARA WELCH ("Judge Welch") is a judge for the Johnson County District Court of Kansas.  Judge Welch is sued in her official capacity as a judge for the Johnson County District Court of Kansas.  Judge Welch performs her official duties in Olathe, Kansas.  At all relevant times, Judge Welch acted under the color of state law.

70.     Defendant JUDGE BRENDA CAMERON ("Judge Cameron") is a judge for the Johnson County District Court of Kansas.  Judge Cameron is sued in her official capacity as a judge for the Johnson Count District Court of Kansas.  Judge Cameron performs her official duties in Olathe, Kansas.  At all relevant times, Judge Cameron acted under color of state law.

71.     Defendant JUDGE CHRISTINA GYLLENBORG ("Judge Gyllenborg") is a judge for the Johnson County District Court of Kansas.  Judge Gyllenborg is sued in her official capacity as a judge for the Johnson County District Court of Kansas.  Judge Gyllenborg performs her official duties in Olathe, Kansas.  At all relevant times, Judge Gyllenborg acted under color of state law.

## JURISDICTION AND VENUE

72.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under 42 U.S.C. § 1983 and the Fourteenth Amendment to the

United States Constitution.  This Court has supplemental jurisdiction over Plaintiffs' claims which are based on state law under 28 U.S.C. § 1367.

73.    This Court has personal jurisdiction over Defendants because Defendants are domiciled, have their principal places of business, or perform their professional duties in the State of Kansas, and the deprivation of Plaintiffs' rights arises out of and relates to Defendants' official duties in the State of Kansas.

74.    Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this district.

## FACTUAL BACKGROUND

### Relevant Statutes

75.    Statutes governing the terms, conditions, and parameters of probation as a sentencing tool are found in Sections 21-6607, 21-6608, and 22-6117, respectively, of the Kansas Revised Statutes.

76.    Kansas Statute § 21-6607 sets out the conditions of probation and states in relevant part that the court "may impose any conditions of probation . . . that the court deems proper" and that "nothing in [the] section shall be construed to limit the authority of the court to impose or modify any general or specific conditions of probation."

77.    Subsection (b) of Kansas Statute § 21-6607 lists conditions of probation the court may impose and states that the list is non-exhaustive.

78.    The discretionary conditions include:

   a)  the condition that the probationer report to a supervision officer as directed and be truthful in all matters;

b)  the condition that a probationer remain within the state of Kansas or other specified areas as defined by the defendant's supervision officer;

c)  the condition that a probationer reside at the defendant's approved residence unless the defendant receives permission from the defendant's supervision officer to relocate;

d)  the condition that a probationer not possess or consume any form of alcohol or intoxicating substance or enter any establishment where alcohol is sold;

e)  the condition that a probationer submit to any form of alcohol or substance use testing directed by the probationer's supervision officer; and

f)  the condition that a probationer subject him or herself to warrantless, suspicionless searches of his or her person, effects, vehicle, residence and property by a court services officer, community correctional services officer or any other law enforcement officer.

79.     Upon information and belief, the Defendant Judges routinely include each of these conditions in probation orders, including the conditions that the probationer refrain from alcohol and submit to substance abuse testing, as a matter of course and without individualized assessment.

80.     In fact, OJA's Manual instructs court staff that whether or not provided with conditions of probation at sentencing, they should enter the statutory conditions found at Section 21-6607(b).

81.     Additionally, pursuant to Kansas Statute § 21-6607(a), the court services officer or community correctional services officer may recommend, and the court may order, the imposition of any conditions of probation; and may at any time order the modification of such conditions after notice to the court services officer or community correctional services officer and

an opportunity for such officer to be heard thereon.  There is no provision requiring that the probationer be heard prior to the modification.

82.    In addition to these discretionary conditions of probation, Kansas Statute § 21-6607(c) makes payment of restitution, payment of a correctional supervision fee, and reimbursement to the state general fund for all or a part of the expenditures by the state board of indigents' defense services to provide counsel and other defense services to the defendant mandatory conditions of probation.

83.    Kansas Statute § 21-6604, which lists the authorized dispositions for crimes, also states that the court shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime.

84.    Kansas Statute § 21-6604 also allows the court to order that the defendant be given a specified time to pay or be allowed to pay in specified installments.

85.    Under Kansas Statute § 21-6604 the court may also find that restitution is unworkable, either in whole or in part.

86.    Kansas Statute § 21-6608 delineates the length or term of probation and states in relevant part that "the period … of probation … fixed by the court shall not exceed two years in misdemeanor cases, subject to renewal and extension for additional fixed periods of two years. Probation … may be terminated by the court at any time, and upon such termination or upon termination by expiration of the term of probation … an order to this effect shall be entered by the court."

87.    Kansas Statute §§ 21-6608(c)(1)-(5) provides the duration of probation in felony cases based upon their severity level on the sentencing guideline grids.

88.    Kansas Statute § 21-6608(c)(1) states that for nondrug crimes the recommended duration of probation is 36 months for crimes in crime severity levels 1 through 5, and 24 months for crimes in crime severity levels 6 and 7.

89.    Kansas Statute § 21-6608(c)(2) states that for drug crimes, the recommended duration of probation is 36 months for crimes in crime severity levels 1 and 2 committed prior to July 1, 2012, and crimes in crime severity levels 1, 2 and 3 committed on or after July 1, 2012.

90.    Kansas Statute § 21-6608(c)(3) states that, except as provided further,[3] in felony cases sentenced at severity levels 9 and 10 on the sentencing guidelines grid for nondrug crimes, severity level 4 on the sentencing guidelines grid for drug crimes committed prior to July 1, 2012, and severity level 5 of the sentencing guidelines grid for drug crimes committed on or after July 1, 2012, if a non-prison sanction is imposed, the court shall order the defendant to serve a period of probation of up to 12 months in length.

91.    Kansas Statute § 21-6608(c)(4) states that in felony cases sentenced at severity level 8 on the sentencing guidelines grid for nondrug crimes, severity level 3 on the sentencing guidelines grid for drug crimes committed prior to July 1, 2012, and severity level 4 of the sentencing guidelines grid for drug crimes committed on or after July 1, 2012, and felony cases sentenced pursuant to Kansas Statute § 21-6824[4] and amendments thereto, if a non-prison sanction is imposed, the court shall order the defendant to serve a period of probation, or assignment to a

---

[3] As discussed further in the body of the Complaint, *see* K.S.A. § 21-6608(c)(5): "if the court finds and sets forth with particularity the reasons for finding that the safety of the members of the public will be jeopardized or that the welfare of the inmate will not be served by the length of the probation terms…the court may impose a longer period of probation." *See also* K.S.A. § 21-6608(c)(7) ("if the defendant is convicted of nonsupport of a child, the period may be continued as long as the responsibility for support continues,") and K.S.A. § 21-6608(c)(8) ("the court may modify or extend the offender's period of supervision, pursuant to a modification hearing and a judicial finding of necessity").
[4] K.S.A. § 21-6824 establishes a non-prison sanction of certified drug abuse treatment programs for certain offenders.

community correctional services program, as provided under Kansas Statute §§ 75-5291 *et seq.*, and amendments thereto, of up to 18 months in length.

92.     Kansas Statute § 21-6608(c)(5) permits the court to extend the length of probation recommended in subsections (c)(3) and (c)(4) and sets forth the particular reasons for a finding that public safety or welfare of the inmate will be jeopardized.

93.     Kansas Statute § 21-6608(c)(6) sets the ceiling for the length or term of probation. It provides that, except as provided in subsections (c)(7) and (c)(8) of the statute, the total period in *all cases* (emphasis added) shall not exceed 60 months, or the maximum period of the prison sentence that could be imposed, whichever is longer.

94.     Kansas Statute § 21-6608(c)(8) permits the court to modify or extend the offender's period of supervision, pursuant to a modification hearing and a judicial finding of necessity for a maximum period of five years, or the maximum period of the prison sentence that could be imposed, whichever is longer, inclusive of the original supervision term.

95.     Finally, Kansas Statute § 21-6608(c)(7) (hereinafter the "Probation Extension Statute") is the subsection of the statute being challenged here.

96.     The Probation Extension Statute provides in relevant part[5] that if a defendant is ordered to pay full or partial restitution, the probation period may be continued as long as the amount of restitution ordered has not been paid.

97.     Chief Judge Droege and the Defendant Judges enforce the statutes found at Kansas Statutes §§ 21-6607, 21-6604, and 21-6608, respectively.

---

[5] The first part of subsection (c)(7) provides that the term of probation for a defendant convicted of nonsupport of a child may be continued as long as the responsibility for support continues.  Though this subsection also bases the length of probation upon ability to pay, Plaintiffs are not challenging this subsection for two reasons.  One, the section is limited to a crime, failure to pay child support, for which the named Plaintiffs were not on probation.  Secondly, unlike the language for extension based upon outstanding restitution, the language regarding support suggests that the legislature anticipated that attaining the age of majority, emancipation, or some other intervening circumstance could end the obligation to pay child support.

98.     Generally, the Defendant Judges have wide discretion in deciding which conditions of probation to impose upon a probationer.

99.     Even though Kansas laws require the Defendant Judges to order restitution, the Defendant Judges have the authority to find that repayment of restitution in full or in part is not workable for a probationer.

100.    The Defendant Judges are not required to extend probation where there is outstanding restitution; it is merely within their discretion to do so.

101.    The Defendant Judges are authorized to discharge persons from probation at any time.

102.    After the Defendant Judges issue an order of restitution, they have two functions relating to the debt: (1) determine whether repayment of restitution is unworkable for the probationer and (2) serve as debt collectors.

103.    The Defendant Judges did not make the determination that restitution was unworkable for Plaintiffs and similarly situated individuals despite knowing about, or having reckless disregard for, their inability to pay.

104.    Instead, in furtherance of debt collection, the Defendant Judges extended the terms of Plaintiffs' probation and kept all original conditions of probation even though they knew or should have known that they were diminishing or stripping Plaintiffs' fundamental rights.

105.    The Defendant Judges promulgated and implemented policies to effect debt collection at the expense of probationers' liberties.

**Defendants' Policies and Practices Regarding Debt Collection**

106.    Section 1.8 of the Johnson County Court Adult Unit Manual defines restitution as monetary compensation the court orders the defendant to pay to the victim for loss, damage or injury.

107.     The Johnson County Court sends a probation orientation letter to probationers notifying them that their probation officers cannot give an extension of time to pay restitution and that their payments should be made to the Clerk of the Johnson County Court.

108.    These policies governing restitution and supervision in Johnson County establish that probation cannot be terminated while restitution remains outstanding and that, in such circumstances, the term of probation is to be extended as an administrative matter.

109.    The Clerk of the Johnson County Court is supervised by Defendant OJA, who is responsible for implementing and enforcing the Court's policies for debt collection.

110.    Johnson County Court policy provides the following with respect to probationers with outstanding restitution:

a)    Terming Cases with Fees Owed: A case with a remaining restitution balance should *never* (emphasis added) be terminated from supervision.  The Court Service Officer should seek a voluntary extension or file an affidavit with the court;

b)    A case with costs owed (not including restitution) may be considered for termination on a case-by-case basis; and,

c)    No early release from supervision should be considered if the client still owes restitution on their case.

20

111.    In light of these directives, the extension of probation in the presence of unpaid restitution is not a judicial determination on the merits but an administrative implementation of policy.

112.    The only predicate factual finding is whether restitution remains outstanding. Once that fact is established—typically through the Clerk's records or the officer's affidavit—the policy requires that the case not be terminated, that early release not be granted, and that supervision be extended.

113.    The judge's role at that point is administrative, confirming compliance with the policy and effectuating the required extension.

114.    The process mirrors other ministerial court functions: the court verifies a policy-defined condition (outstanding restitution) and then applies the mandated administrative consequence (extension of probation). No balancing of factors or exercise of judicial judgment is called for or permitted by the policy in these circumstances.

115.    Upon information and belief, the Defendant Judges enforced this restitution policy for years prior to its formal publication, treating probation extensions in cases with outstanding restitution as an administrative matter and extending supervision as a routine ministerial step required by policy rather than as an exercise of judicial discretion.

**The State Action of Defendant Butler**

116.    As the entity that administers debt collection for the Kansas judicial branch, OJA has the exclusive prerogative of providing appropriate and necessary systems for collection of restitution for crime victims and administrative fees from probationers in Kansas, including Plaintiffs.

117.    At relevant times, Defendant OJA contracted with Defendant Butler to provide the above-described collections services.  The contract between Butler and OJA is attached hereto as Exhibit A.

118.    In accordance with the contract, Butler, through its employees, collects restitution from probationers, which is a function that traditionally is the prerogative of the State of Kansas through OJA.

119.    Butler's collection practices are undertaken pursuant to the contract that was approved and signed by OJA and thus Butler is acting under the color of state law.

120.    Butler collects money owed to courts and restitution owed to crime victims for 13 Judicial Districts in Kansas which encompasses 29 counties including Defendant Johnson County Court.

121.    Unlike typical debt collectors that serve private creditors without state involvement, Butler pursued and accepted Defendant OJA's state-commissioned collection work to ensure a steady and reliable business pipeline from Kansas.

122.    Butler is required to remit payments collected on behalf of the courts to OJA weekly.

123.    Butler is required to notify the court on whose behalf it is collecting restitution when the debt is paid.

124.    Butler is required to submit a record of "paid in full" accounts daily.

125.    The Johnson County Court and OJA have the right, within their sole discretion, to recall a referred debt or restitution from Butler at any time.

126.    Prior to beginning efforts to collect the account for restitution, Butler must first notify the beneficiary of restitution and inform the person or entity that a restitution debt has been

referred to it by the court. The notice must disclose to the beneficiary of restitution that the cost of collection will be paid from any amount collected on the account but will not diminish the amount of restitution owed by the debtor.

127.    The contract grants Butler administrative costs of up to 3% of the amount collected.

128.    Pursuant to the contract, OJA pays Butler a 25% collection fee for each debt.

129.    Plaintiffs Rice, Carter, and other members of the Collections Damages Subclass, who are paying their restitution debt to Butler must cover the cost of the administrative and collection fees in addition to the restitution owed to the victims in order to satisfy court debt.[6]

130.    The contract states that the amount probationers owe will not be changed without an order from the court; however, the Defendant Judges added more than 25% to the debt owed by Plaintiffs by sending the restitution debt to Butler for collection.

131.    When OJA entered a contract that automatically increases the amount owed for probationers referred to debt collection by 25%, Defendant OJA and the Defendant Judges acted beyond the scope of Kansas law, which requires a court order to change the amount of restitution owed.

132.    The contract states that no interest will be collected by Butler on any referred debt or restitution, yet upon information and belief, Butler added interest to the restitution debts owed by Plaintiff Rice and Carter.

133.    Upon information and belief, it is Butler's practice to assess interest against all criminal defendants from whom they are collecting restitution court debt.

---

[6] Debts owed to courts also include: The cost of collection when collection services of a contracting agent are utilized. *See* K.S.A. § 20-169. *See* Ex. A.

134.   Upon information and belief, it is Butler's practice to notify the Court when probationers do not make payments towards outstanding restitution and Butler's fees.

135.   The contract between OJA and Butler placed additional burdens on probationers that violated their constitutional rights.

136.   Chief Judge Droege, the Defendant Judges, Defendant OJA, and Defendant Johnson County Court's policies and practice of referring Plaintiffs' debt to Defendant Butler have the effect of increasing court debt and extending the sentence for probationers who owe restitution.

137.   Well aware of Butler's willingness to accept work from OJA, the Defendant Judges and OJA relied on Butler to collect restitution and keep Plaintiffs on probation regardless of whether doing so violated Plaintiffs' constitutional rights.

138.   Butler is liable for the violation of Plaintiffs' constitutional rights by virtue of its policies and practices, which policies and practices included: (a) collecting restitution owed to crime victims on behalf of the State of Kansas, (b) adding a 25% collection fee and 3% administrative fee to all debt referred to Butler that must be paid before a probationer can be discharged from probation, and (c) reporting probationers' non-compliance with restitution orders to the Court which could result in a warrant for the probationers' arrest.

139.   As a direct and proximate result of Butler's actions, condoned by Defendants OJA and the Defendant Judges, Plaintiffs' constitutional rights were violated, and they suffered injuries and damages as set forth in this Complaint.

### Named Plaintiffs' Probation Extensions

140.   In each Plaintiff's case, the Defendant Judges extended the probationary period beyond the length of time Plaintiff could have served for the conviction.

*Plaintiff Alicia McKnight*

141.    Plaintiff Alicia McKnight is a 39-year-old African American woman. She is a wife, a mother, and a small business owner. Plaintiff McKnight was 30 years old when she was convicted and sentenced by the Johnson County Court. Prior to her conviction, she was a schoolteacher and a registered and participating voter. Plaintiff McKnight has been a resident of Jackson and Clay Counties in Missouri at all times relevant to the complaint allegations. As such, her probation includes an Interstate Compact Agreement.

142.    Plaintiff McKnight was convicted of four counts of Identity Theft, a Level 8 Non-Person felony, an offense punishable by a maximum of 18 months of probation if no prison sanction is imposed pursuant to statute. Defendant Chief Judge Droege (then, Judge Droege) sentenced Plaintiff McKnight to eight months' imprisonment in the Kansas Department of Corrections and 18 months of probation on September 30, 2016.

143.    As a condition of probation, Defendant Chief Judge Droege ordered Plaintiff McKnight to pay $76,838 in restitution.

144.    Plaintiff McKnight stated that she had no means of paying restitution because she had been imprisoned, could not return to her teaching profession, and had no source of income or assets with which to pay the debt.

145.    Defendant Chief Judge Droege did not make findings regarding workability of restitution but ordered Plaintiff McKnight to make a minimum payment of $50 per month.

146.    On March 29, 2018, Defendant Chief Judge Droege extended Plaintiff McKnight's probation for 18 months until September 30, 2019, pursuant to an "agreed" extension of probation. Defendant Chief Judge Droege did not make findings regarding the workability of restitution or give Plaintiff McKnight an opportunity to be heard on her ability to pay. Defendant Chief Judge

Droege entered the order after Plaintiff McKnight signed an "Acknowledgments of Rights and Waiver" in which she waived her right to be represented by counsel, her right to an open hearing, and her "right to call witnesses and present evidence for [the] benefit [of herself]."

147.    Plaintiff McKnight signed the waiver because she believed her options were to sign the waiver or go to jail.

148.    On or about September 16, 2019, Defendant Chief Judge Droege conducted a revocation hearing during which he determined that Plaintiff McKnight violated her probation by her failure to satisfy payment of her restitution debt, sanctioned Plaintiff McKnight with two days in jail—what the Court refers to as a "quick dip," and extended her probation for 18 months until March 16, 2021.  Defendant Chief Judge Droege did not give Plaintiff McKnight an opportunity to be heard on her ability to pay or make findings regarding workability of restitution.

149.    On or about July 9, 2021, Defendant Judge Joyce held a revocation hearing virtually during which he extended Plaintiff McKnight's probation for 18 months until January 9, 2023, because Plaintiff McKnight  had not satisfied her restitution debt.  Defendant Judge Joyce did not give Plaintiff McKnight an opportunity to be heard on her ability to pay or make findings regarding workability of restitution.

150.    On January 3, 2023, Defendant Judge Joyce extended Plaintiff McKnight's probation for a period of 60 months until the date January 9, 2028, after Plaintiff McKnight signed a "Voluntary Modification of Order of Probation."

151.    Plaintiff McKnight was not represented by counsel when the Johnson County Court presented her with and required her to sign the "Voluntary Extension of Probation" form.

152.    Plaintiff McKnight rightfully believed that her failure to sign the form would result in a revocation of probation and jail time.

153.    As a wife, mother, and small business owner, Plaintiff McKnight understood that any jail time would have devastating consequences for her family and livelihood, leaving her with no real choice but to sign the probation extension form.

154.    As a result of Defendant's actions, Plaintiff McKnight will serve a minimum of eleven and a half years of probation, ten years longer than the statute outlines.

### *Plaintiff Alanna Marie Carter*

155.    Plaintiff Carter is a 34-year-old Native American and white woman.  She is a mother and also works outside the home as a home health aide.  When she was convicted and sentenced by the Johnson County Court she was 26 years old, a registered voter and participant in the electoral process.  Plaintiff Carter has been a resident of Jackson County, Missouri at all times relevant to this complaint.

156.    Plaintiff Carter was convicted of one count of Computer Crime, a Level 8 Nonperson Felony, as well as one count of Theft, a Level 9 Nonperson Felony.  Plaintiff Carter was sentenced by Defendant Judge Welch on both convictions to a total term of imprisonment lasting six months as well as a term of probation for eighteen months on March 12, 2018.

157.    As a condition of probation, Defendant Judge Welch ordered Plaintiff Carter to pay $7,631.58 in restitution.

158.    Plaintiff Carter stated she had no means of paying the restitution because at the time probation was ordered she had just given birth to a child and was unemployed.

159.    Defendant Judge Welch did not make any findings regarding workability but ordered Plaintiff Carter to pay $100 per month commencing on April 12, 2018.

160.    On or about August 30, 2018, Plaintiff Carter's restitution debt was sent to Defendant Butler for debt collection purposes.

161.    On or about December 6, 2019, Defendant Judge Welch conducted a revocation hearing during which Plaintiff Carter stipulated to her failure to pay the entirety of her restitution debt within the 18-month probation period.

162.    Consequently, on or about December 9, 2019, Defendant Judge Welch extended Plaintiff Carter's probationary period for another 18 months.  Defendant Judge Welch did not make any findings regarding workability of Plaintiff Carter's restitution.

163.    On or about June 15, 2021, Defendant Judge Foth conducted a revocation hearing during which he revoked Plaintiff Carter's probation because he determined that she had consumed alcohol and tested positive for drugs.  Defendant Judge Foth ordered an extension of Plaintiff Carter's probation for an additional term of 18 months.  Defendant Judge Foth did not make any findings regarding workability of Plaintiff Carter's restitution.

164.    Plaintiff Carter signed a voluntary extension of her probation term on September 19, 2022, which extended her probation term to June 15, 2024, because Plaintiff Carter had not been able to pay her restitution debt.

165.    Plaintiff Carter, again, signed a voluntary extension of her probation term on May 31, 2024, which extended her probation term to June 15, 2025, because Plaintiff Carter was not able to pay her restitution debt.

166.    Plaintiff Carter, again, signed a voluntary extension of her probation term on May 22, 2025, which extended her probation term to June 15, 2028, because Plaintiff Carter was not able to pay her restitution debt.

167.    Plaintiff Carter signed each voluntary extension of her probation because she rightfully believed that her refusal to sign the extension meant she would go to jail.

168.    As a mother and employee, Plaintiff Carter understood that any jail time would have devastating consequences for her family and livelihood, leaving her with no real choice but to sign the probation extension form.

169.    As a result of Defendants' actions, Plaintiff Carter will serve a minimum of 10 years on probation.

### Plaintiff Debra Rice

170.    Plaintiff Debra Rice is a 31-year-old white female.  She is married, the mother of two and also works outside the home.  When she was convicted and sentenced by the Johnson County Court on May 24, 2018, she was 23 years old.  Prior to her conviction, she was a registered and active voter.  Plaintiff Rice has been a resident of Missouri at all times relevant to the complaint allegations, and as such subject of an Interstate Compact agreement.

171.    Plaintiff Rice pled guilty to one count of forgery, a Level 8 non-person felony, an offense punishable by a maximum of 18 months of probation if no prison sanction is imposed pursuant to statute and one count of Theft <$25000, a Level 9 non-person felony, punishable by 12 months' probation if a non-prison sanction is imposed.

172.    On May 24, 2018, Defendant Chief Judge Droege sentenced Plaintiff Rice to 18 months of probation with an underlying sentence of seven months in prison and 12 months post-release supervision.

173.    As a condition of probation, Defendant Chief Judge Droege ordered Plaintiff Rice to pay $17,002.93 in restitution.

174.    Plaintiff Rice made a payment of $1,000.00 in advance of her plea.  Defendant Chief Judge Droege ordered Plaintiff Rice to pay not less than $50 a month.

175.    On or about June 5, 2019, Defendant Chief Judge Droege extended Plaintiff Rice's probation for 24 months until June 4, 2021, for "not making payments" toward her restitution debt. The modified probation order states that Plaintiff Rice "will pay $500" per month.

176.    On or about March 17, 2020, Plaintiff Rice's restitution debt was sent to Defendant Butler for debt collection purposes.

177.    Plaintiff Rice signed a voluntary extension of her probation term on June 2, 2021, which extended her probation term to June 5, 2023, because Plaintiff Rice had not been able to pay her restitution debt.

178.    Plaintiff Rice, again, signed a voluntary extension of her probation term on May 9, 2023, which extended her probation term to June 5, 2024, because Plaintiff Rice had not been able to pay her restitution debt.

179.    Plaintiff Rice, again, signed a voluntary extension of her probation term on May 10, 2024, which extended her probation term to June 5, 2025, because Plaintiff Rice had not been able to pay her restitution debt.

180.    On or about May 14, 2025, Defendant Judge Joyce entered a Generic Order of Voluntary Extension extending Plaintiff Rice's term of probation for 12 months until June 5, 2026. The reason for the extension was Plaintiff Rice's failure to pay restitution.  Defendant Judge Joyce did not make findings regarding the workability of restitution or give Plaintiff Rice an opportunity to be heard on her ability to pay.

181.    Prior to the May 14, 2025, Extension Order and on other occasions when her probation was extended, Plaintiff Rice was presented with a Voluntary Extension of Probation form by the Court Service Officer.  Plaintiff Rice was not advised of her right to a hearing or that she could decline to sign the form.

182.    Plaintiff Rice was not represented by counsel when the Johnson County Court presented her with and required her to sign the "Voluntary Modification of Order of Probation" form.

183.    Plaintiff Rice rightfully believed that her failure to sign the form would result in a revocation of probation and jail time.

184.    As a wife, mother, and employee, Plaintiff Rice understood that any jail time would have devastating consequences for her family and livelihood, leaving her with no real choice but to sign the probation extension form.

185.    As a result of Defendants' actions, Plaintiff Rice will serve a minimum of eight years of probation, six and a half years longer than the statute outlines.

*Plaintiff Jeffrey Englund*

186.    Plaintiff Jeffrey Englund is a 47-year-old white male.  He currently works as a warehouse worker but has been terminated from previous jobs solely because he is on probation. When he was convicted and sentenced by the Johnson County Court on April 30, 2018, he was 40 years old and a registered voter and participant in the electoral process.  Plaintiff Englund is currently a resident of Kansas but has resided in Missouri and Illinois where he was the subject of Interstate Compacts.

187.    On February 7, 2018, Plaintiff Englund pled guilty to one count of mistreatment of an elderly person, a Level 5 person felony, punishable, in his case, by a maximum of 34 months of imprisonment.

188.    On June 24, 2018, Defendant Judge Brenda Cameron sentenced Plaintiff Englund to 36 months of probation.

189.    On July 10, 2018, Defendant Judge Cameron entered judgment.  As a condition of probation, Judge Cameron ordered Plaintiff Englund to pay $38,607.00 in restitution.

190.    Defendant Judge Cameron ordered Plaintiff Englund to pay not less than $50 a month in restitution.

191.    Plaintiff Englund signed a voluntary extension of his probation term on June 11, 2021, which extended his probation term for 36 months to June 28, 2024, solely because Plaintiff Englund had not been able to pay his restitution debt.

192.    Plaintiff Englund was not represented by counsel when the Johnson County Court presented him with and required he sign the "Voluntary Modification of Order of Probation" form.

193.    Plaintiff Englund rightfully believed that his failure to sign the form would result in a revocation of probation and jail time.

194.    As someone who struggled to find work because of his probationary status, Plaintiff Englund understood that any jail time would have devastating consequences for his livelihood, leaving him with no real choice but to sign the probation extension form.

195.    On September 17, 2024, Defendant Judge Christina Dunn Gyllenborg conducted a revocation hearing.  On September 18, 2024, Defendant Judge Gyllenborg ordered an extension of Plaintiff Englund's probation for an additional term of 24 months and switched to monitoring Plaintiff Englund's probation for payments only.

196.    As a result of Defendants' actions, Plaintiff Englund will serve a minimum of eight years on probation, more than twice the length of his original 36 month sentence.

### *All Named Plaintiffs*

197.    In each Plaintiff's case, the Defendant Judges failed to conduct a hearing to determine whether Plaintiff had the ability to pay outstanding restitution.

198.    In each Plaintiff's case, as was their normal practice, the Defendant Judges extended not just the obligation to pay restitution, but to comply with all other conditions of probation.

199.    The policies and practices the Defendant Judges used to extend probation based upon outstanding restitution for the named Plaintiffs are consistent with and representative of the policies and practices Defendants used with respect to all class members.

**Impact of Defendants' Practices on Indigent Probationers' Right to Vote**

200.    Pursuant to Kansas Statute § 21-6613(b), probationers who were convicted of a felony are ineligible to register as a voter or to vote in any election held under the laws of Kansas until they have completed the terms of their probation.

201.    The Defendant Judges' policy and practice of extending probation indefinitely for probationers who cannot afford to pay off their restitution debt has the effect of preventing probationers from having their voting rights restored based solely on their indigency.

202.    The Defendant Judges' referrals to Butler had the effect of increasing the debt owed and thus extending the time spent on probation even further for Plaintiffs.

203.    Defendant OJA and the Defendant Judges created an obstacle and an additional requirement for voter eligibility by referring Plaintiffs' restitution debt to Butler.

204.    This is not an additional obstacle to voter eligibility for other probationers who can afford to pay their debt owed before it is sent to Butler.

205.    The Defendant Judges acted beyond the scope of authority granted to them under the Kansas Constitution which places the right to place restrictions on the right to vote solely within the purview of the legislature.

**By Extending All Conditions of Probation Due to Indigency, the Defendant Judges Deprived Plaintiffs of the Fourth Amendment Right to Privacy.**

206.    Under Kansas law, probationers are subject to searches without reasonable cause or suspicion.

207.    Plaintiff McKnight's Order of Probation states that she shall submit to random testing for drugs and/or alcohol at her own expense and requires her to "waive any privilege of confidentiality which may exist under any State or Federal law relating to treatments, reports, evaluations, histories, tests, testing results and infraction reports" notwithstanding the fact that Plaintiff McKnight was not convicted of a substance abuse related offense.

208.    On or about August 2023, Plaintiff McKnight's probation officer ordered her to complete a substance abuse assessment.  Plaintiff McKnight was required to provide a urine sample by a probation officer in Kansas City, Missouri because it was their practice to have every probationer provide a sample when they reported; even though Plaintiff McKnight was not convicted of a substance abuse related offense and she was ultimately transferred to another probation reporting location as it was determined her case should not have been transferred to the Kansas City office.

209.    Plaintiff McKnight's conditions of probation require her to submit to DNA testing.

210.     Plaintiff McKnight remains subject to revocation of her probation if she fails to comply with these and all conditions of her probation order.

211.    Plaintiff Carter's Order of Probation states that she shall submit to random testing for drugs/alcohol at her own expense and requires her to "waive[] any privilege of confidentiality which may exist under any State or Federal law relating to treatments, reports, evaluations, histories, tests, testing results, and infraction reports" notwithstanding the fact that Plaintiff Carter's underlying conviction is not drug or alcohol related.

212.    Plaintiff Carter was required, according to the conditions of her probation, to call by telephone every evening to determine whether she was randomly selected for a drug screening.

213.    Plaintiff Carter was required to complete drug screenings, on average, twice per week for the first year of her probation.

214.    Plaintiff Carter's conditions of probation also require her to submit to DNA testing.

215.    Plaintiff Carter remains subject to revocation of her probation if she fails to comply with these and all conditions of her probation.

216.    Plaintiff Rice's Order of Probation states that she shall submit to random testing for drugs/alcohol at her own expense and requires her to "waive[] any privilege of confidentiality which may exist under any State or Federal law relating to treatments, reports, evaluations, histories, tests, testing results, and infraction reports" notwithstanding the fact that Plaintiff Rice's underlying conviction is not drug or alcohol related.

217.    Plaintiff Rice's conditions of probation require her to submit to DNA testing.

218.    Plaintiff Rice remains subject to revocation of her probation if she fails to comply with these and all conditions of probation.

219.    Plaintiff Englund's Order of Probation states that he shall submit to random testing for drugs/alcohol at his own expense and requires him to "waive[] any privilege of confidentiality which may exist under any State or Federal law relating to treatments, reports, evaluations, histories, tests, testing results, and infraction reports" notwithstanding the fact that Plaintiff Englund's underlying conviction is not drug or alcohol related.

220.    Plaintiff Englund was required, according to the conditions of his probation, to telephone every evening to determine whether he was randomly selected for a drug screening which he would have to submit to the following day.

221.    Plaintiff Englund was frequently required to complete drug screenings, beyond the original term of his probation, all of which he paid for.

222.    Plaintiff Englund's conditions of probation also require him to submit to DNA testing.

223.    Plaintiff Englund remains subject to revocation of his probation if he fails to comply with these and all conditions of his probation.

224.    Named Plaintiffs, the class members they represent, and all probationers in the State of Kansas may be subjected to suspicionless, warrantless searches per the Kansas Supreme Court's interpretation of K.S.A. § 22-3717 in *State v. Toliver*.[7]

225.    The restrictions on the named Plaintiffs' privacy rights are consistent with and representative of the restrictions Defendants placed on all class members.

### Defendants' Policies and Practices Deprive Plaintiffs of Fundamental Rights Including Personal Liberty and Participation in the Political Process Based on Their Indigency and in Violation of the Equal Protection Clause.

226.    Personal liberty consists in the power of locomotion, of changing situation, or removing one's person to whatever places one's own inclination may direct, without restraint, unless by due course of law.

227.    Plaintiff McKnight was required to obtain the court's approval to travel outside of the State of Missouri, even to attend doctor's appointments in Johnson County, Kansas, less than 25 miles from her home.

228.    Plaintiff McKnight's conditions of probation require that she not change her residential address without prior approval of her probation officer.

---

[7] *State v. Toliver*, 307 Kan. 945 (2018).

229.    Plaintiff McKnight's conditions of probation demand that she not associate with anyone who has been convicted of any crime "unless authorized by the PO or in connection with custody, residential programs or required probation programs."

230.    Plaintiff McKnight's conditions of probation prohibit her going to places where alcohol or cereal malt beverages are sold for consumption on the premises. At one point, she could not take her daughter to a birthday party at Chuckee Cheese because the location served alcohol.

231.    Plaintiff Carter's conditions of probation require that she not change her residential address without prior approval from her probation officer.

232.    Plaintiff Carter was required to obtain the Court's approval before she could travel outside of the State of Missouri. Her father lives in Arizona and she cannot visit him without permission from the Court.

233.    Plaintiff Carter's conditions of probation demand that she not associate with anyone who has been convicted of any crime "unless authorized in writing by the PO or in connection with custody, residential programs or required probation programs."

234.    Plaintiff Rice must seek permission before traveling outside of the State of Missouri.

235.    Plaintiff Rice's ability to travel freely with her family is hindered by the requirement that she request permission and by the financial burden of restitution payments.

236.    Plaintiff Englund's conditions of probation prohibited him from changing his address without the probation officer's approval.

237.    While on probation, Plaintiff Englund has lived in Kansas City, Missouri and St. Louis, Missouri, both cities that border another state.  At various points, his circumstances required that he relocate from St. Louis to the other side of the state line in Illinois, or from Kansas City to

the other side of the state line in Kansas.  On those occasions, Plaintiff Englund was not permitted to change residences until his probation officer approved his new residence.

238.    Plaintiff Englund's conditions of probation demand that he not associate with anyone who has been convicted of any crime "unless authorized in writing by the PO or in connection with custody, residential programs or required probation programs," a condition that has implications not only on where he may habit or recreate, but also upon where he may live and work.

239.    The restrictions on the named Plaintiffs' liberty interests are consistent with and representative of the restrictions Defendants placed on all class members.

240.    In each case, the restrictions on personal liberty are the result of Plaintiffs' inability to pay restitution and the Defendants' implementation of the Probation Extension Statute.

241.    Upon information and belief, Defendants removed the restrictions on personal liberty for similarly situated probationers who had the means to pay restitution, proving that infringing upon Plaintiffs' personal liberty does not serve a public safety or other compelling state interest.

242.    The right to participate in the political process, whether federal or state, is also fundamental and cannot be abridged based on one's ability to pay a fee.

243.    States do not have the authority to ignore constitutional principles when providing an avenue to regain access to the franchise.

244.    Plaintiff McKnight has been on probation and consistently made restitution payments since 2016.

245.    Plaintiff McKnight still owes approximately $70,000.

246.    Plaintiff McKnight does not have the means to pay off her outstanding restitution debt.  Her family's income is not always sufficient to pay monthly expenses.  However, because she fears returning to jail and being separated from her family, she makes a $50 restitution payment to the Court each month even though it presents a hardship for her and her family.

247.    Because of her absolute inability to pay the restitution ordered, per the Probation Extension Statute and Defendants' practices, Plaintiff McKnight will likely permanently remain on probation and deprived of the right to vote.

248.    Plaintiff Carter has been on probation and has consistently made restitution payments since 2018.

249.    Plaintiff Carter still owes approximately $6,000.

250.    Plaintiff Carter does not have the means to pay off her outstanding restitution debt and making restitution payments to the Court each month presents a hardship for her and her family.

251.    She often has to choose which bills to pay each month and has to go without necessary items such as groceries.  At one point, when she was unable to make restitution payments in the amount of $150 per month, the State took the money from her income tax refund.

252.    This hardship is exacerbated because a significant portion of Plaintiff Carter's payments towards her restitution debt is taken by Defendant Butler, thereby only applying the remaining balance of each monthly payment towards Plaintiff Carter's restitution debt.

253.    Notwithstanding the hardship, Plaintiff Carter continues to make restitution payments because she fears going to jail, which would cause her to lose her job and the ability to care for her children.

254.    Because of her absolute inability to pay the restitution ordered, per the Probation Extension Statute and Defendants' practices, Plaintiff Carter will likely permanently remain on probation and deprived of the right to vote.

255.    Plaintiff Rice has been on probation and making restitution payments since 2018.

256.    Plaintiff Rice still owes $5,585 in restitution and a total balance of $7,547.29, including collection fees.

257.    Plaintiff Rice does not have the means to satisfy her restitution debt.  Her household income is insufficient to cover the family's living expenses.  At times she has to borrow money and pay for groceries on credit to meet her family's needs.

258.    The hardship is exacerbated by the fact that she must pay the significant collection fees levied by Defendant Butler per its agreement with Defendant OJA before she can be discharged from probation.

259.    Notwithstanding the hardship, Plaintiff Rice makes restitution payments as best she can because she fears being sent to jail and separated from her children and spouse.

260.    Because of her absolute inability to pay the restitution ordered, per the Probation Extension Statute and Defendants' practices, Plaintiff Rice will likely permanently remain on probation and deprived of the right to vote.

261.    Plaintiff Englund has been on probation and made restitution payments since 2018.

262.    Plaintiff Englund still owes more than $36,000.

263.    Plaintiff Englund does not have the means to pay off his outstanding restitution debt.  Making restitution payments is a struggle as his income is not always sufficient to pay monthly living expenses.  Plaintiff Englund fears he will be on probation for the rest of his life

because of the restitution debt. However, because he fears returning to jail and losing his job, he makes restitution payments.

264.    Because of his absolute inability to pay the restitution ordered, per the Probation Extension Statute and Defendants' practices, Plaintiff Englund will likely permanently remain on probation and deprived of the right to vote.

265.    Upon information and belief, unlike the named Plaintiffs here who cannot afford to pay their restitution, probationers who can afford to pay restitution can complete the conditions of their probation, have their probation terminated, and regain the right to vote.

266.    What is clear from this comparison is that even with the same circumstances, a person who is poor and cannot pay restitution will remain disenfranchised while a person who can afford to pay restitution can regain the franchise.

267.    The Fourteenth Amendment's Equal Protection Clause prohibits outcomes in the criminal system from turning on a person's ability to make a monetary payment.

268.    Defendants' enforcement of Kansas Statute § 21-6608(c) treats similarly situated individuals—probationers ordered to pay restitution as a condition of probation—differently based on whether they are indigent. Indigent probationers are deprived of the right to vote solely because they cannot afford financial restitution amounts. Similarly, they are deprived of personal liberty solely because they cannot afford to pay restitution.

269.    This wealth-based discrimination is prohibited by the Equal Protection Clause of the Fourteenth Amendment.

**Defendants Placed a Badge of Involuntary Servitude or Slavery Upon Plaintiffs Based Upon Their Indigency.**

270.    Social signifiers that stigmatize and degrade members of a discrete social group who are deprived of important rights or liberties are badges of slavery.[8]

271.    Subjecting an individual to the will of another for an indefinite period is a badge of slavery.

272.    Indefinite restriction on the right to travel, a fundamental right, is an indicium of involuntary servitude and second-class citizenry.

273.    A law or practice that denies otherwise lawful habits, activities, and goods to a discrete group based upon their classification is a badge of slavery and an indicium of involuntary servitude and second-class citizenry.

274.    A condition that requires an individual to provide unpaid labor based upon his color, class, or other classification, is an indicium and badge of slavery.

275.    Plaintiffs live with the social stigma of being on probation.

276.    Plaintiffs must disclose their probationary status to potential and current employers.

277.    Plaintiffs must disclose their probationary status to housing providers.

278.    Being on probation is a stain and blemish upon one's character in society.

279.    Per the Defendant Judges' orders and policies, Plaintiffs are subject to the demands and supervision of the court service officer for as long as they are unable to pay restitution in full.

280.    Plaintiff McKnight's probation orders, including the current order entered pursuant to the "voluntary" modification, place her under the supervision of Johnson County Adult Court Services and require her to comply with "all rules and regulations of the assigned programs and further written conditions the probation officer may require."

---

[8] *Dred Scott v. Sandford*, 60 U.S. 393 (1857).

281.    The condition that Plaintiff McKnight continue to submit to the supervision of a probation officer is based solely on her inability to pay restitution.

282.    Because of the Probation Extension Statute and Defendants' policies and practices, Plaintiff McKnight will be subject to the will and supervision of a probation officer indefinitely.

283.    Plaintiff Carter's probation orders place her under the supervision of Johnson County Adult Court Services and require her to comply with "all rules and regulations of the assigned programs, and further written conditions the probation officer may require."

284.    The condition that Plaintiff Carter continue to submit to the supervision of a probation officer is based solely on her inability to pay restitution.

285.    Because of the Probation Extension Statute and Defendants' policies and practices, Plaintiff Carter will be subject to the will and supervision of a probation officer for as long as she is indigent and unable to pay off her restitution.

286.    The condition that Plaintiff Rice continue to submit to the supervision of a probation officer is based solely on her inability to pay restitution.

287.    Because of the Probation Extension Statute and Defendants' policies and practices, Plaintiff Rice will be subject to the will and supervision of a probation officer indefinitely, for as long as she is unable to pay restitution.

288.    Plaintiff Englund's probation orders place him under the supervision of Johnson County Adult Court Services and require him to comply with "all rules and regulations of the assigned programs, and further written conditions the probation officer may require."

289.    Plaintiff Englund's probation orders required him to report "in such time and the manner directed by the probation officer."

290.    The condition that Plaintiff Englund continue to submit to the supervision of a probation officer is based solely on his inability to pay restitution.

291.    Because of the Probation Extension Statute and Defendants' policies and practices, Plaintiff Englund will be subject to the will and supervision of a probation officer for as long as he is indigent and unable to pay off his restitution.

292.    Plaintiff McKnight has been subjected to bench warrants, to revocation and reinstatement of probation, and to jail time due to her inability to satisfy restitution debt.

293.    Plaintiff Carter has been subjected to bench warrants and to revocation and reinstatement of her probation due to her inability to satisfy restitution debt.

294.    Plaintiff Rice has been subjected to bench warrants, revocation and reinstatement of her probation and to wage garnishment due to her inability to satisfy restitution debt.

295.    Plaintiff Englund has been subjected to revocations and reinstatement of probation based upon his inability to satisfy restitution debt.

296.    While on probation, Plaintiff McKnight had to request permission to travel from Kansas City, Missouri to Kansas, a distance of less than 15 miles, and she may not move from the state of Missouri.

297.    While on probation, Plaintiff Carter had to request permission to travel from Independence, Missouri to Kansas.

298.    While on probation, Plaintiff Rice had to request permission to travel outside the state of Missouri, including less than 25 miles from her home to Kansas.

299.    Plaintiff Englund had to obtain approval to move to homes in neighboring towns to his then residences.

300.    Named Plaintiffs and the class members they represent who are restricted in their right to travel freely bear an indicium of slavery and second-class citizenry.

301.    Pursuant to Kansas Statute § 21-6613(b), probationers who were convicted of a felony are ineligible to register as a voter or to vote in any election held under the laws of the state of Kansas until they have completed the terms of probation.

302.    Plaintiff McKnight exercised the right to vote before she was convicted and would do so again if she were legally permitted to register to vote.  However, for as long as she is on probation she will be unable to do so.

303.    Plaintiff Carter exercised the right to vote before she was convicted and would do so again if she were legally permitted to register to vote.  However, for as long as she is on probation she will be unable to do so.

304.    Plaintiff Rice exercised the right to vote before she was convicted and would do so again if she were legally permitted to register to vote.  However, for as long as she is on probation she will be unable to do so.

305.    Plaintiff Englund exercised the right to vote before he was convicted and would do so again if he were legally permitted to register to vote.  However, for as long as he is on probation he will be unable to do so.

306.    Because Plaintiffs are not lawfully permitted to exercise the right to vote, the right to full citizenry, they bear an indicium of slavery and second-class citizenry.

307.    As a matter of routine, and without regard for their substance use prior to conviction, the Defendant Judges made it unlawful for Plaintiffs to imbibe alcohol.

308.    The probation order for Plaintiff McKnight states that she "shall not possess or consume alcohol or cereal malt beverages[.]"  Plaintiff McKnight was aged 27 at the time of her

conviction and neither use nor possession of controlled substances was an element in the crime of which she was convicted.

309. The probation order for Plaintiff Carter states that she "shall not possess or consume alcohol or cereal malt beverages[.]" Plaintiff Carter was aged 26 at the time of her conviction and neither use nor possession of controlled substances was an element in the crime for which she was convicted.

310. The probation order for Plaintiff Rice states that she "shall not possess or consume alcohol or cereal malt beverages[.]" Plaintiff Rice was aged 23 at the time of her conviction and neither use nor possession of controlled substances was an element in the crime for which she was convicted.

311. The probation order for Plaintiff Englund states that he "shall not possess or consume alcohol or cereal malt beverages[.]" Plaintiff Englund was aged 40 at the time of his conviction and neither use nor possession of controlled substances was an element in the crime of which he was convicted.

312. For individuals who were never on probation, and for former probationers who were able to pay restitution and be discharged, the consumption of an alcoholic beverage is both socially acceptable and lawful.

313. For Plaintiffs, the purchase and use of this otherwise lawful consumer good may result in a violation of probation and incarceration.

314. In denying them otherwise lawful consumer goods and lawful habits because of their pecuniary status Defendants have placed a badge of slavery upon Plaintiffs.

315.    Plaintiff McKnight's conditions of probation restrict her right to associate freely by dictating that she "not associate with anyone who has been convicted of a crime" and by prohibiting her from going to places where alcohol or malt liquor is sold for consumption.

316.    Plaintiff Carter's conditions of probation restrict her right to associate freely by dictating that she "not associate with anyone who has been convicted of a crime."

317.    Similarly, Plaintiff Rice's and Plaintiff Englund's conditions of probation restrict their right to associate freely by dictating that they "not associate with anyone who has been convicted of a crime" and that they not go anyplace alcohol or malt liquor is sold for consumption.

318.    By denying Plaintiffs the right to free association because of their inability to pay restitution, Defendants have placed a badge of slavery and indicia of second-class citizenry on Plaintiffs.

319.    The indicia of slavery and second-class citizenry Defendants placed on the named Plaintiffs are consistent with and representative of the impact Defendants' policies and practices placed on all class members.

## CLASS ACTION ALLEGATIONS

320.    Pursuant to FED. R. CIV. P. 23(a) and (b)(2), the individually named Plaintiffs bring this action on behalf of themselves and all other persons similarly situated as representatives of the classes and subclasses.  Plaintiffs seek damages[9] and declaratory and prospective injunctive relief against the Defendants on behalf of the classes.

321.    Plaintiffs bring this class action on behalf of the following four classes and subclasses, as set forth below:

---

[9] Plaintiffs seek an award of monetary damages for the violation of their constitutional rights, but only against those Defendants from whom such relief is legally available and not barred by immunity or other applicable law.

a) <u>The Main Injunctive Class</u>: All probationers of the Johnson County Court whose original term of probation has been or will be extended for longer than five years due to inability to pay restitution.[10]

b) <u>The Collection Fees Injunctive Subclass</u>: All probationers of the Johnson County Court who have been or will be on probation for more than five years due to inability to pay restitution and who, because the Defendants have turned their restitution debt over to Defendant Butler, are required to pay collection fees in addition to the original restitution debt before they can be discharged from probation.

c) <u>The Main Damages Class</u>: All probationers of Johnson County Court who have been on probation for more than five years because of their inability to pay restitution, and were charged supervision, urinalysis, and/or collection administration fees.

d) <u>The Collection Fees Damages Subclass</u>: All probationers of the Johnson County Court who have been on probation for more than five years due to their inability to pay restitution and who have paid collection administration fees to Defendant Butler.

322.   Plaintiffs, and others similarly situated in the classes, as set forth herein, have been systematically deprived of the constitutional right to privacy and the fundamental right to travel, have been unlawfully victimized by debt collectors, and subjected to second-class citizenry on the

---

[10] In addition to claims for prospective injunctive relief, the Main Injunctive Class also brings claims for declaratory relief.  "Main Injunctive Class" is used as a shorthand.

basis of their indigency and have sustained damages as a direct and proximate cause of these violations.

323.    This action is brought and may properly be maintained as a class action pursuant to the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1)-(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.  Common questions of fact and law exist as to all Class members which predominate over all questions affecting only individual Class members.  Plaintiffs reserve the right to amend the class definition if discovery or further investigation reveals that the class should be expanded, divided into subclasses, or modified in any way.

### a.  Numerosity.

324.    This action consists of two main classes and two subclasses; each class is sufficiently numerous to make joinder impracticable.  Although the exact number of class members is unknown to Plaintiffs at this time, and can be determined only through appropriate discovery, it is anticipated that each of the classes is composed of more than a hundred members.  This estimate of the number of potential class members is based upon data provided by the Johnson County Probation Office.  *See* Kansas State Board of Indigents' Defense Services FY 24 2024 Annual Report attached hereto as Exhibit B.  Cases also consistently increase from year to year.  *Id.* The subclasses of disenfranchised class members are also sufficiently numerous.  According to the Kansas Sentencing Commission, 84% of adults charged with felonies in Kansas in 2023 were indigent and received a court-appointed attorney. *Id.* Upon information and belief, Johnson County has well over one hundred bond supervision cases per year. Eighty-four percent of that amount for indigent subclasses would total well over 84 subclass members per year and total in the hundreds over the course of the class period.  The exact number of class and subclass members is readily

available through analysis of Defendants' records in the course of discovery. Even without an exact number, the class is sufficiently numerous to warrant class treatment, and the disposition of the claims of these class members in a single action will provide substantial benefits to all parties and to this Court.

          b. **Commonality.**

325.    There are numerous questions of law and fact common to Plaintiffs and the class members. The categories of legal harms suffered by Plaintiffs and class members are identical. The answers to these common questions will thus advance resolution of the litigation as to all class members. These common legal and factual issues include but are not limited to:

a) Whether Defendants ordered the extension of probationary terms without sufficiently considering ability to pay;

b) Whether Defendants provided constitutionally deficient due process by ordering the extension of probationary terms without a hearing;

c) Whether Defendants provided constitutionally deficient due process by allowing revocations of probation based on failure to make restitution and administrative and collection fee payments without assessing probationers' ability to pay those fees;

d) Whether Defendants promulgated policies to effect debt collection at the expense of probationers' liberties;

e) Whether Defendants' enforcement of Kansas Statute § 21-6608(c) treated similarly situated individuals differently based on whether they are indigent;

f) Whether Defendants' enforcement of the Kansas Statute § 21-6608(c) violated the Fourteenth Amendment's Equal Protection Clause;

g)  Whether Defendants' enforcement of the Kansas Statute § 21-6608(c) deprived probationers of substantive due process; and,

h)  Whether Defendants' practice of subjecting probationers to searches of their homes and persons, including substance abuse assessments, without probable cause or reasonable suspicion for the searches violated class members' right to privacy.

### c.  **Typicality.**

326.  Plaintiffs' claims are typical of the claims of the classes.  Plaintiffs' and the class members' claims arise from the Defendants' promulgation and enforcement of policies to effect debt collection at the expense of probationers' liberties.  All class members of the Main Injunctive Class have had or will have the original term of their probation extended due to inability to pay restitution, and as such they have been illegally deprived of security in their homes, effects and persons, unable to register to vote, and restricted in their movements and associations for lengths of time that exceed the maximum sentence outlined by statute due to their inability to pay restitution.  All class members of the Collection Fees Injunctive Subclass have had or will have the length of their probation term extended due to collection fees owed to Defendant Butler.  All class members of the Main Damages Class were charged collection and administrative fees without any assessment of their ability to pay.  All subclass members of the Collection Fees Damages Subclass are deprived of nonmonetary alternatives to the fee, and all are subject to jail when they non-willfully fall behind on payments because they are indigent and were turned over to debt collection and charged collection administration fees.

### d.  **Adequate Representation.**

327.    Plaintiffs will fairly and adequately represent and protect the interests of the classes. Plaintiffs and the proposed class members are represented by the ACLU of Kansas and Willkie Farr & Gallagher LLP, whose attorneys are experienced in complex civil rights issues and class actions.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the class and have adequate resources to do so.

### e.  **Superiority.**

328.    A class action is superior to other available methods for a fair and efficient adjudication of this matter in that the litigation of separate actions by individual class members would unduly burden the Court and create the possibility of conflicting decisions.

329.    This action is maintainable as a class action under FED. R. CIV. P. 23(b)(1).  The classes and subclasses consist of, at least, hundreds of members.  Individual lawsuits would risk inconsistent and varying rulings, potentially leading to conflicting standards of conduct for Defendants.  Moreover, separate actions by individual members could result in decisions that, in practice, would significantly hinder other members' ability to protect their interests.

330.    This action is also maintainable as a class action pursuant to FED. R. CIV. P. 23(b)(2) because declaratory and prospective injunctive relief are appropriate with respect to each of the classes as a whole because Defendants have acted on grounds applicable to the class, and an injunction prohibiting Defendants from extending the term of probation due to failure to pay restitution would provide relief to every class and subclass member.

### f.  **Predominance.**

331.    This action is also maintainable as a class action pursuant to FED. R. CIV. P. 23(b)(3) because common questions of fact and law concerning Defendants' practices and the

constitutionality of those practices predominate over individual questions. A class action is superior to any other available method for the fair and efficient adjudication of this controversy. Individual adjudications would be inefficient, not in the least because the likely recovery of any individual class member would be swallowed up by litigation costs, and risk inconsistent rulings, even though every adjudication would turn on the same policies. A class action will be manageable.

### CLAIMS FOR RELIEF

### Count I
### Violation of the Fourteenth Amendment to the
### United States Constitution—Substantive Due Process and 42 U.S.C. § 1983
### (Against All Defendants)

332.    Plaintiffs incorporate by reference each and every paragraph herein as if fully restated.

333.    By subjecting Plaintiffs to diminished freedom of movement, restrictions on their freedom of association, disenfranchisement, and no right to be secure in their homes, persons, and affairs for indefinite periods for crimes otherwise punishable by less than 36 months of probation solely because of their inability to pay restitution debt and collection fees, Defendants engaged in conduct that shocks the conscience and arbitrarily interfered with rights implicit in the concept of ordered liberty, and is a deprivation of due process as guaranteed under the Fourteenth Amendment.

334.    At all relevant times, the Defendants were acting under the color of state law, when they jailed or threatened to jail Plaintiffs, stripped Plaintiffs of an expectation of privacy in their homes, subjected Plaintiffs to searches of their persons through substance abuse screenings, and deprived Plaintiffs of the rights to vote and to associate freely for indefinite periods because of Plaintiffs' inability to pay restitution and collection fees.

335.    Likewise, Defendant Butler acted under color of state law because it made use of state procedures with the overt, significant assistance of the courts and law enforcement officials when it jailed or threatened to jail Plaintiffs and extended their probation in order to collect restitution and its own collection fees.

336.    Defendant Butler's interdependent relationship with OJA and the Johnson County Court allowed it to retain twenty-five percent (25%) of all fees the Collections Fees Sub-Class Plaintiffs paid toward their outstanding restitution debt.

337.    Defendants' enforcement of Kansas Statute § 21-6607(c) has been used to deprive probationers of their right to suffrage based solely on their indigency, and, in particular, their inability to fulfill restitution payments.

338.    At all relevant times, Kansas, Defendant AG Kobach, the Defendant Judges, and Chief Judge Droege were acting under the color of state law when Defendants engaged in a practice of indefinitely delaying probationers' opportunity for re-enfranchisement based solely on their inability to fulfill their outstanding restitution payments, especially because such a delay served no rehabilitative or punitive purpose.

339.    As a direct and proximate cause of the Defendants' practice of indefinitely extending probation sentences based solely on outstanding restitution payments, Plaintiffs have suffered a violation of their constitutional rights.

340.    Defendants' decision to restrict Plaintiffs' ability to travel across state borders and to associate freely and diminished their privacy rights—particularly when Plaintiffs' probation terms have been indefinitely extended solely for outstanding restitution—serves no compelling state interest and violates the Fourteenth Amendment's Substantive Due Process Clause.

**Count II**

**Violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983—Right to Travel**
**(Against All Defendants)**

341.    Plaintiffs incorporate by reference each and every paragraph herein as if fully restated.

342.    The Fourteenth Amendment's Substantive Due Process Clause safeguards the fundamental right of freedom of movement.

343.    Built implicitly within the right of freedom of movement is the right to travel, which is similarly considered to be a fundamental right.

344.    The right to travel "protects the right of a citizen of one State to enter and to leave another State."[11]

345.    Defendants extended Plaintiffs' term of probation and the condition of probation that restricted their ability to travel based solely on the inability to pay restitution.

346.    At all relevant times, Kansas, Defendant AG Kobach, the Defendant Judges, and Chief Judge Droege were acting under the color of state law when Defendants engaged in a practice to extend the restrictions on Plaintiffs' travel because of outstanding restitution.

347.    Defendants' practice of restricting travel because of outstanding restitution does not serve a rehabilitative or punitive purpose.  Prohibiting their ability to travel outside of Kansas is not a narrowly tailored means to collect restitution payments and does not serve any compelling state interest.

348.    Likewise, Defendant Butler acted under color of state law because it made use of state procedures with the overt, significant assistance of the courts and law enforcement officials

---

[11] *Saenz v. Roe*, 526 U.S. 489, 500 (1999).

when it jailed or threatened to jail Plaintiffs and extended their probation in order to collect restitution and its own collection fees.

349.    Restricting Plaintiffs' ability to cross state lines while serving an indefinite probation period on the basis of outstanding restitution serves no rehabilitative or punitive purpose and is thus not narrowly tailored to any compelling governmental interest.

## Count III
## Violation of the Fourteenth Amendment to the United States Constitution—Procedural Due Process Regarding Ability to Pay and 42 U.S.C. § 1983
## (Against All Defendants)

350.    Plaintiffs incorporate by reference each and every paragraph herein as if fully restated.

351.    The Fourteenth Amendment's Procedural Due Process Clause prohibits outcomes in the criminal legal system from hinging on a person's ability to make a monetary payment.  The Fourteenth Amendment's Procedural Due Process Clause states: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law … " U.S. CONST. amend. 14.

352.    At all relevant times, all Defendants were acting under the color of state law. Defendants' enforcement of Kansas Statute § 21-6607(c) provides constitutionally deficient due process by asking for and issuing warrants for arrest and allowing revocations of probation based on failure to make restitution and administrative and collection fee payments without assessing probationers' ability to pay those fees.

353.    The Fourteenth Amendment's Procedural Due Process Clause prohibits outcomes in the criminal legal system from hinging on a person's ability to make a monetary payment.

354.    Defendants provide constitutionally deficient due process by issuing warrants for arrest and allowing revocations of probation based on failure to make restitution and administrative and collection fee payments without assessing probationers' ability to pay those fees.

355.    Defendants extended Plaintiffs' probationary term repeatedly without the Plaintiffs ever having an opportunity to present at a hearing their inability to pay restitution.

356.    Even if Plaintiffs attempted to exercise their right to be heard in front of a judge, they would place themselves at risk of "dip" sanctions.  In effect, Defendants criminalize poverty by jailing probationers who cannot afford restitution and fees.

357.    These "debtors' prisons" are unconstitutional.

358.    As a direct and proximate cause of Defendants' practice of indefinitely extending probation sentences based on outstanding restitution payments even when Plaintiffs have no ability to pay, Plaintiffs have suffered violations of their constitutional rights.

359.    Defendants provide constitutionally deficient due process by ordering extension of probationary terms without considering ability to pay, let alone providing Plaintiffs with an opportunity to plead their case.

360.    Defendants' issuing warrants for arrest and allowing revocations of probation based on failure to make restitution and administrative and collection fee payments without assessing probationers' ability to pay those fees is a violation of the Fourteenth Amendment's Due Process Clause.

**Count IV**
**Violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §**
**1983—Equal Protection Regarding Nonpayment of Restitution and Administrative Costs**
**(Against All Defendants)**

361.    Plaintiffs incorporate by reference each and every paragraph herein as if fully restated.

362.    The Fourteenth Amendment's Equal Protection Clause also prohibits outcomes in the criminal legal system from turning on a person's ability to make a monetary payment.  The Fourteenth Amendment's Equal Protection Clause states: "[N]or shall any State deprive any person

of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. 14.

363.    Defendants' enforcement of Kansas Statute § 21-6607(c) treats similarly situated individuals—probationers ordered to pay restitution as a condition of probation—differently based on whether they are indigent.  Indigent probationers risk reincarceration and the unending surveillance, supervision, and deprivation of privacy and the right to vote because they cannot afford restitution amounts.

364.    At all relevant times, all Defendants were acting under the color of state law when Defendants engaged in a practice of asking for and indefinitely extending probationer terms for probationers that were unable to fulfill their outstanding restitution payments, especially when there was no rehabilitative or punitive purpose to extending said probation.

365.    Plaintiffs were unable to fulfill their outstanding restitution payments due to their indigency.  Because they were unable to fulfill this debt, Defendants continuously extended Plaintiffs' probation term, and subsequently, the restoration of their civil rights necessary to re-enfranchise them has yet to happen.

366.    In contrast, upon information and belief, probationers who were convicted of the same crime and ordered to restitution who were not of indigent status were able to fulfill their outstanding restitution obligations, and have thus been restored of their civil rights, including their right to privacy, the right to vote, and the right to travel.

367.    A system which only permits the wealthy to effectively buy the restoration of their fundamental civil rights serves no rational basis to a legitimate governmental interest.

368.    This practice of extending probation and the conditions that limit individuals' civil liberties based solely on outstanding restitution payments is a violation of the Fourteenth Amendment's Equal Protection Clause.

**Count V**
**Violation of the Fourth Amendment to the U.S. Constitution and 42 U.S.C. § 1983—Denial of the Right to Privacy**
**(Against State of Kansas, Kris Kobach, the Defendant Judges, and Chief Judge James Droege)**

369.    Plaintiffs incorporate by reference each and every paragraph herein as if fully restated.

370.    The United States Constitution's Fourth Amendment prohibits the government from conducting unreasonable searches and seizures.

371.    The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated …" U.S. CONST. amend. 4.

372.    Built within the right to be free from unreasonable searches and seizures is the fundamental right to privacy, otherwise known as an individual's fundamental right to a reasonable expectation of privacy of their person.

373.    The Fourth Amendment's protections are incorporated against the states pursuant to the Fourteenth Amendment's Due Process Clause.

374.    Although probationers may have a diminished right to privacy, their right to a reasonable expectation of privacy of their person still exists, with the touchstone of the right turning on whether or not law enforcement officers had "reasonable suspicion" of criminal wrongdoing.

375.    Defendants' enforcement of Kansas Statute § 21-6607(c) has resulted in unconstitutional infringements upon Plaintiffs' reasonable expectation of privacy in their persons. In particular, Defendants' enforcement of the statute has resulted in Plaintiffs being subjected to unreasonable searches of their persons via drug and alcohol tests, especially when there is no reasonable suspicion that Plaintiffs have consumed such substances.

376.    Defendants extended Plaintiffs' term of probation and the condition of probation that infringed upon Plaintiffs' reasonable expectation of privacy based solely on their inability to pay restitution.

377.    At all relevant times, Kansas, Defendant AG Kobach, the Defendant Judges, and Defendant Chief Judge Droege were acting under the color of state law when Defendants subjected Plaintiffs to controlled substance screenings as part of the conditions of probation when there was no nexus between substance abuse and the reason for ordering or extending probation, subsequently violating Class Members' constitutional right to privacy.

378.    Because the Class Members, including the named Plaintiffs, have not been convicted of any drug-related offenses, Defendants cannot establish that subjecting Plaintiffs to substance abuse screenings is narrowly tailored to a compelling state interest.

379.    Defendants' practice of indiscriminately subjecting Plaintiffs to unreasonable searches of their persons via drug and alcohol tests because of outstanding restitution does not serve a rehabilitative or punitive purpose.

380.    Subjecting Plaintiffs to unreasonable searches of their persons via drug and alcohol tests is not a narrowly tailored means to collecting restitution payments and does not serve any compelling state interest.

381.    Defendants' practice of conducting randomized drug tests does not serve a rehabilitative or punitive purpose.

382.    As a direct and proximate cause of Kansas, Defendant AG Kobach, the Defendant Judges, and Defendant Chief Judge Droege's practice of imposing randomized drug testing as a condition upon probationers whose convictions are not substance-related, Plaintiffs have suffered a violation of their constitutional rights.

383.    Moreover, the Fourth Amendment guarantees the right to an expectation of privacy in one's home.  But per Kansas law, probationers can be subjected to suspicionless searches of their bodies or their homes at any time.

384.    At all relevant times, Kansas, Defendant AG Kobach, the Defendant Judges, and Defendant Chief Judge Droege were acting under the color of state law when Defendants made Plaintiffs subject to suspicionless searches of their homes as part of conditions of probation, thereby depriving Class Members of the constitutional right to privacy.

385.    This invasion of privacy is a violation of the Fourth Amendment.

**Count VI**
**Violation of the Thirteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983**
**(Against State of Kansas, Kris Kobach, the Defendant Judges and Chief Judge James Droege)**

386.    Plaintiffs incorporate by reference each and every paragraph herein as if fully restated.

387.    The Constitution of the United States' Thirteenth Amendment abolished slavery and involuntary servitude.  The United States Constitution's Thirteenth Amendment states: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."  U.S. CONST. amend. 13.

388.    The Thirteenth Amendment also prohibits the badges and incidents of slavery.

389.    Restitution does not serve a punitive purpose under Kansas state law.

390.    Plaintiffs' convictions do not permit imposition of slavery or involuntary servitude.

391.    Subjecting an individual to the will of another for an indefinite period is a badge of slavery.

392.    Indefinite restriction on the right to travel, a fundamental right, is an indicium of involuntary servitude and second-class citizenry.

393.    Imposition of restrictions on voting, like poll taxes, is an indicium of involuntary servitude.

394.    Denial of the right to vote, to fully exercise citizenry, is an indicium of slavery, second-class citizenry, and involuntary servitude.

395.    A law or practice that denies otherwise lawful habits, activities, and goods to a discrete group based upon their classification is a badge of slavery and an indicium of involuntary servitude and second-class citizenry.

396.    At all relevant times, Kansas, Defendant AG Kobach, the Defendant Judges, and Defendant Chief Judge Droege were acting under the color of state law when Defendants subjected Plaintiffs to the will of court service officers, imposed restrictions on Plaintiffs' right to travel, denied Plaintiffs the right to vote, and denied Plaintiffs lawful habits, activities and associations all for indefinite periods (up to and including a lifetime) during which Plaintiffs were unable, due to indigency, to pay restitution debt.

397.    Defendants' law and practices are based upon the classification of indigence and not as punishment for the crimes for which Plaintiffs were convicted as those crimes are not punishable by indefinite supervision and restrictions.

398.    Defendants' laws and practices violate the Thirteenth Amendment of the United States Constitution against slavery and involuntary servitude.

## Count VII
### Violation of Kan. Const. Art. 5, § 2
### (Against OJA, Chief Judge James Droege, the Defendant Judges, and Butler)

399.    Plaintiffs incorporate by reference each and every paragraph herein as if fully restated.

400.    The Kansas Constitution's Article V provides that the legislature may, by law, exclude persons from voting because of commitment to a jail or penal institution.

401.    However, Article V, sec. 2 does not permit the legislature to exclude persons from voting due to criminal or civil debt.  KAN. CONST. art. 5, § 2.

402.    Moreover, the right to place restrictions on the right to suffrage belongs solely within the purview of the legislature; the judicial branch has no authority to place restrictions on the right to suffrage or to exclude persons from voting due to criminal or civil debt.

403.    At all relevant times, Defendant OJA, Defendant Butler, the Defendant Judges, and Defendant Chief Judge Droege were acting under the color of state law when they extended probation for Plaintiffs pursuant to Kansas Statute § 21-6607(c).

404.    Defendant OJA, Defendant Butler, the Defendant Judges, and Defendant Chief Judge Droege extended Plaintiffs' probation in a manner that deprived Plaintiffs of the right to vote due to outstanding restitution alone which, due to their indigency, Plaintiffs were unable to pay.

405.    Under Kansas Constitution Article V, individuals who are serving criminal sentences, including probation, are disqualified from voting, and cannot be re-enfranchised until their civil rights are fully restored.  KAN. CONST. art. 5, § 2.

406.    Kansas Statute § 21-6607(c) as applied by Defendant Chief Judge Droege excludes Plaintiffs from voting until they have paid outstanding debt.

407.    A policy manual for the Johnson County Court states, "a case with a remaining restitution balance should *never* (emphasis added) be terminated from supervision."

408.    The contract between Defendant OJA and Defendant Butler also require that the costs of collection must also be paid before a probationer can complete his sentence.

409.    As a result, Plaintiffs will be excluded from voting until they satisfy the outstanding restitution obligations and pay the administrative costs and collection fees.

410.    Defendant OJA, Defendant Butler, the Defendant Judges, and Defendant Chief Judge Droege's policy requiring collection costs to be paid in order to complete a probation sentence has the effect of placing qualifications on the right to vote and infringing upon Plaintiffs' right to vote.

411.    Defendant OJA, Defendant Butler, the Defendant Judges, and Defendant Chief Judge Droege's practice of making re-enfranchisement contingent on fulfilling all outstanding restitution obligations is a violation of the Kansas Constitution and the separation of powers doctrine.

**Count VIII**
**Violation of the Kan. Const. B. of R. § 9**
**Cruel and Unusual Punishment**
**(Against All Defendants)**

412.    Plaintiffs incorporate by reference each and every paragraph herein as if fully restated.

413.    The Kansas Constitution's Bill of Rights § 9 prohibits the imposition of cruel and unusual punishments.  The Bill of Rights § 9 states: "[E]xcessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted."  KAN. CONST. B. OF R. § 9.

414.    A punishment is cruel and unusual when, although not cruel or unusual in its method, is so disproportionate to the crime for which it is inflicted that it shocks the conscience.

415.    Kansas statutes proscribe lifetime post-release supervision only for individuals convicted of aggravated sex crimes.

416.    Plaintiffs were not convicted or sentenced to probation because of aggravated sex crimes.

417.    Defendants' practice of subjecting Plaintiffs to indefinite probation is due to Plaintiffs' inability to pay restitution.

418.    Kansas, Defendant AG Kobach, Defendant OJA, Defendant Chief Judge Droege, the Defendant Judges, and Defendant Butler have a policy and practice of extending probationers' sentences in a manner that is disproportionate to the crime for which they were sentenced based solely upon outstanding restitution and of adding collection fees, which further extends the probation sentence.

419.    As a direct and proximate cause of the practice, Plaintiffs have suffered a violation of their constitutional rights, as well as financial harms, including, but not limited to, collection fees and administrative fees.

420.    Defendant Chief Judge Droege's practice of extending probation beyond the term the legislature deemed appropriate for the nature and severity of the crime for which probationers are convicted, based upon the probationers' inability to pay outstanding restitution debt, violates the Kansas Bill of Rights' Cruel and Unusual Punishment Clause.

421.    Moreover, the Probation Extension Statute which, on its face and as applied, permits lifetime post-release supervision for indigent probationers who, but for their indigency,

would serve no more than 60 months on probation pursuant to Kansas Statutes, violates the Kansas

Bill of Rights' Cruel and Unusual Punishment Clause.

**Count IX**
**Violation of the Kan. Const. B. of R. § 15**
**Unreasonable Searches and Seizures**
**(Against State of Kansas, Kris Kobach, the Defendant Judges and Chief Judge James**
**Droege)**

422.    Plaintiffs incorporate by reference each and every paragraph herein as if fully

restated.

423.    The Kansas Constitution's Bill of Rights § 15 prohibits the government from

conducting unreasonable searches and seizures.  The Bill of Rights § 15 states: "The right of the

people to be secure in their persons and property against unreasonable searches and seizures, shall

be inviolate; and no warrant shall issue but on probable cause, supported by oath or affirmation,

particularly describing the place to be searched and the persons or property to be seized."  KAN.

CONST. B. OF R. § 15.

424.    Built within the right to be free from unreasonable searches and seizures is the

fundamental right to privacy, otherwise known as an individual's fundamental right to a reasonable

expectation of privacy of their *person*.

425.    The right to privacy is a fundamental right, and the conditions of probation can

restrict fundamental rights *only* when the restriction bears a reasonable relationship to

rehabilitative goals, the protection of the public, or the nature of the offense.

426.    At all relevant times, Kansas, Defendant AG Kobach, Defendant Chief Judge

Droege, and the Defendant Judges were acting under the color of state law when Defendants

subjected Plaintiffs to controlled substance screenings as part of the conditions of probation when

there was no nexus between substance abuse and the reason for ordering or extending probation, which violates Class Members' constitutional right to privacy.

427.    Because Plaintiffs' convictions were unrelated to any form of substance abuse, invasions of their right to privacy for randomized drug testing do not serve any rehabilitative purpose or protection of the public.

428.    As a direct and proximate cause of Kansas', Defendant AG Kobach's, Defendant Chief Judge Droege's, and the Defendant Judges' practice of imposing randomized drug testing as a condition upon probationers whose convictions are not substance-related, Plaintiffs have suffered a violation of their constitutional rights.

429.    Moreover, section 15 of the Kansas Bill of Rights guarantees the right to an expectation of privacy in one's home.  But per Kansas law, probationers can be subjected to suspicionless searches of their homes.

430.    At all relevant times, Kansas, Defendant AG Kobach, Defendant Chief Judge Droege, and the Defendant Judges were acting under the color of state law when they subjected Plaintiffs to suspicionless searches of their homes as part of the conditions of probation, thereby depriving Class Members of their constitutional right to privacy.

431.    This invasion of privacy is a violation of the Kansas Bill of Rights § 15.

## PRAYER FOR RELIEF

432.    WHEREFORE, the named Plaintiffs, on behalf of the putative Class and Subclass they represent, respectfully request that this Honorable Court exercise its legal and equitable powers and award class-wide relief as follows:

a)    Permanently enjoin Defendants from subjecting Plaintiffs to practices that violate their rights, including by:

     i.   Requiring Defendants to conduct a hearing before extending any Plaintiff's term of probation based on alleged nonpayment of restitution;

    ii.   Requiring Defendants, at such hearing, to consider each Plaintiff's present ability or inability to pay ordered restitution before extending probation on the basis of nonpayment;

   iii.   Requiring Defendants to provide Plaintiffs a meaningful opportunity to be heard on the issue of ability to pay, and, where the court finds a Plaintiff indigent, prohibiting Defendants from extending probation on the basis of nonpayment;

   iv.   Prohibiting Defendants from increasing or causing to be increased the amount of restitution owed by Plaintiffs to cover collection-related costs or fees unrelated to Plaintiffs' conduct, including costs arising from the State's decision to utilize a third-party collector, such as Butler; and

    v.   Requiring Defendants to obtain a court order, as required by Kansas Statutes §§ 21-6604 and 21-6607(c), before any change to the total amount of restitution owed by a Plaintiff, including any change purportedly resulting from the transfer of collection activities to Butler.

b) Pursuant to 28 U.S.C. § 2201, declare that:

    i.   Defendants' practices violate the Fourth, Eighth, Thirteenth, and Fourteenth Amendments to the United States Constitution.

    ii.   Defendants' practices of implementing Kansas Statutes §§ 21-6607, 21-6608, and 22-6117 violate Kansas law.

c)  Award Plaintiffs actual and compensatory damages,[12] in an amount to be proven at trial.

d)  Award Plaintiffs the reasonable costs and expenses incurred to litigate in this action including reasonable attorney's fees, under 28 U.S.C. § 1920, 42 U.S.C. § 1988, and the Federal Rules of Civil Procedure 23(e) and (h).

e)  Grant such other equitable relief as the Court deems just, necessary, and proper to protect Plaintiffs from further harm.

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury of all triable matters.

Date: October 30, 2025

*/s/ Monica Bennett*
Monica Bennett KS #30497
Jefferson Wolfe KS #30847
**ACLU OF KANSAS**
PO Box 13048
Overland Park, KS  66282
(913) 490-4100
mbennett@aclukansas.org
jwolfe@aclukansas.org

*/s/ Craig C. Martin*
Craig C. Martin, IL 6201581 (*pro hac vice forthcoming*)
John Mitchell, IL #6283552 (*pro hac vice forthcoming*)
Matthew Thomas, IL#6244009 (*pro hac vice forthcoming*)
**WILLKIE FARR & GALLAGHER LLP**
300 N LaSalle Dr.
Chicago, IL  60654
(312) 728-9000
cmartin@willkie.com
jmitchell2@willkie.com
mthomas@willkie.com

*Attorneys for Plaintiffs and All Others Similarly Situated*

---

[12] Plaintiffs seek an award of monetary damages for the violation of their constitutional rights, but only against those Defendants from whom such relief is legally available and not barred by immunity or other applicable law.